Citation Nr: 1610613 
Decision Date: 03/16/16 Archive Date: 03/23/16

DOCKET NO. 10-42 011 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to an increased rating for posttraumatic stress disorder (PTSD), currently evaluated as 30 percent disabling.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Appellant and his former spouse


ATTORNEY FOR THE BOARD

C. Lovett, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1969 to February 1971. His awards include the Combat Infantry Badge

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision from the Department of Veteran's Affairs (VA) Regional Office (RO).

In March 2011, the Veteran and his former spouse testified at a Board video-conference hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record.

This case was previously before the Board in July 2013, at which time the Board granted an increase to 30 percent rating for PTSD effective February 8, 2010, but remanded the appeal for a higher rating for additional development. 

The Board also notes that, in addition to the paper claims file, there is a paperless, electronic claims file associated with the Veteran's claim, and it has been reviewed.

The Board notes that the Veteran has filed a notice of disagreement (NOD) at the RO concerning claims for service connection for hearing loss and tinnitus. Such appeal is contained in the VACOLS appeals tracking system as an active appeal at the RO. While the Board is cognizant of the Court's decision in Manlincon v. West, 12 Vet. App. 238 (1999), the Board notes that in this case, unlike in Manlincon, the RO has fully acknowledged the NOD and is currently in the process of adjudicating the appeal. Action by the Board at this time may serve to actually delay the RO's action on that appeal. As such, no action will be taken by the Board at this time, and the issues presently before the RO pertaining to hearing loss and tinnitus will be the subject of a later Board decision, if ultimately necessary.



FINDINGS OF FACT

For the entire appeal period, the Veteran's PTSD has been manifested by symptoms productive of occupational and social impairment with occasional decreases in work efficiency and intermittent periods of inability to perform occupational tasks due to such symptoms as chronic sleep impairment, nightmares, and avoidant behavior.


CONCLUSION OF LAW

The criteria for a disability rating higher than 30 percent for PTSD have not been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015).
REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and to Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Compliant VCAA notice was provided in April 2010.

In addition, the Board finds that the duty to assist a claimant has been satisfied. The Veteran's service treatment records are on file, as are various post-service medical records. VA examinations have been conducted and opinions obtained. 

The Veteran was also afforded a hearing before the Board. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the officer who chairs a hearing explain the issues and suggest the submission of evidence that may have been overlooked. Here, the Veterans Law Judge (VLJ) identified the issue to the Veteran, and the Veteran testified as to his symptomatology, treatment history, and functional impairment. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the hearing. The hearing focused on the elements necessary to substantiate the claim, and the Veteran provided testimony relevant to those elements. As such, the Board finds that no further action pursuant to Bryant is necessary, and the Veteran is not prejudiced by a decision at this time.

The Board also notes that actions requested in the prior remand have been undertaken. Pursuant to the July 2013 remand the Veteran was asked to provide information about treatment providers in a letter dated that month, VA treatment records were obtains, and a new VA PTSD examination was conducted. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

The Veteran's representative submitted an Appellant's Brief in January 2016 asserting that the Veteran should be afforded a new psychiatric evaluation because the last VA examination, which was performed in August 2013, is allegedly too old to adequately address the current severity of the Veteran's disability. The Board disagrees. Here, the Veteran has not asserted to VA that his PTSD has worsened since the August 2013 VA examination. The mere passage of time between the medical examination and the Board's decision is insufficient to trigger VA's duty to provide a new medical examination. Palczewski v. Nicholson, 21 Vet. App. 174, 182 (2007) (holding that where claimant has not alleged a worsening of a service-connected disability, there exists no duty under 38 U.S.C.A. § 5103A for the Secretary to provide a medical examination). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a questions as to which of two evaluations apply, assigning the higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In both initial rating claims and increased rating claims, the Board must discuss whether "staged ratings" are warranted. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Service connection for PTSD was established in a 2008 rating decision with a 10 percent evaluation assigned. The Veteran filed the instant claim for an increased rating in February 2010. 

The Veteran's PTSD is rated as 30 percent disabling during the appeals period pursuant to the General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130, Diagnostic Code 9411. Under that formula, a 30 percent rating is warranted for occupational and social impairment with occasional decreases in work efficiency and intermittent periods of an inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed moods, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126. The specified factors for each incremental psychiatric rating are not requirements for a particular rating, but instead are examples providing guidance as to the type and severity of symptoms' effects on social and work situations. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

One factor for consideration is the Global Assessment of Functioning (GAF) score, which is a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, Fourth Edition (DSM-IV). A GAF score of 61 to 70 reflects some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF score of 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant), or where there is major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). While the Rating Schedule does indicate that the rating agency must be familiar with the DSM-IV, it does not assign disability percentages based solely on GAF scores. See 38 C.F.R. § 4.130.

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that his PTSD is appropriately evaluated as 30 percent disabling for the appeals period. 

During the April 2010 VA examination, the Veteran reported experiencing nightmares about once a week, especially when something during the day would lead him to think about war. He stated he could only sleep about five hours each night. He described his practice of avoiding war movies and news of the current war. He stated he is not fond of crowds and does not like to talk or think about the war. He described himself as somewhat distant from others, yet very personable, social, and able to control his irritability for the most part. He denied ever having attempted or seriously contemplated suicide. The Veteran was not receiving or seeking mental health treatment. The VA examiner diagnosed mild to occasionally moderate PTSD at worst and assigned a GAF score of 65 to 70. 

In lay statements dated in March 2011, the Veteran and his former spouse described his condition. The Veteran stated that after Vietnam he got married but could not cope with it. He had trouble being in crowds and little things would upset him. It was tough to watch the news or sleep. He described shying away from his friends to the point that he is considered a "loner." He was worried about trying to date anyone.

The Veteran's former spouse described his fear of water and his nightmares about his experiences. She stated that he would ruminate about his time in service and not want to be around anyone. She also reported that the Veteran would dive to the floor when he heard a car back fire, thinking it was a gun shot. She also described one incident when he requested that she take him to the hospital because he "wanted to jump out our second floor bedroom window." She stated that many times he would be sad and not want to go out of the house. 

During his March 2011 Board hearing, the Veteran again described being a "loner" and experiencing nightmares because of his service. Specifically, he reported experiencing nightmares, on average, twice a week and generally sleeping only three to four hours a night. He stated that he does not like being in groups. Although he was recently retired, he described the stress added to his job as a salesman because of his condition. He also reported having some panic attacks but not regularly and confirmed having a fear of water. 

The Veteran's former spouse also testified at the March 2011 Board hearing, affirming the information from her written March 2011 statement.

While the Veteran's treatment records during the period on appeal do not contain relevant information as to the severity of the Veteran's PTSD disability during the appeals period, there are a few references to the Veteran's diagnosis. In September 2010, the Veteran's PTSD was listed as stable during a primary care visit. In May 2011, the Veteran stated that he was doing well from a PTSD standpoint, again at a routine medical appointment. Then in June 2012, during a men's health prevention visit, the nurse performed a PTSD yearly screening test. The Veteran answered the questions negatively. 

The Veteran underwent a VA examination in August 2013, at which time the VA examiner described the Veteran's PTSD to be mild to occasionally moderate in intensity. The Veteran's GAF score was approximately 65 with regard to his PTSD. The VA examiner opined that the Veteran's PTSD was presenting at that time with occasional decreases in efficiency in terms of work, social interaction, and psychological behavior. At that time, it appeared that the Veteran had had no formal psychiatric treatment and he was not taking any psychotropic medication.

During the August 2013 VA examination, the Veteran denied ever having attempted or seriously contemplated suicide. He reported having occasional dreams about his experiences in Vietnam, from which he would awake in a cold sweat. He was having increasing and more frequently intense distressing recollections about his experiences in Vietnam and was becoming more responsive psychologically to stimuli that reminded him of it. He stated that he did not like to think or talk about his experiences in Vietnam, but was doing that more recently. But, he was avoiding things that would remind him. He described feeling detached and estranged when he would be out in public, and he stated that he did not like crowds and preferred to have his back to a wall. He also attested to having some trouble falling and staying asleep, indicated that he had some trouble concentrating, and reported being on guard and easily startled. 

The examiner stated the Veteran was competent to handle his own funds and make medical decisions. Ultimately, the VA examiner concluded that the Veteran continued "to have mild, but more so moderate impairments in functioning as a result of PTSD, secondary to his time in Vietnam." The VA examiner did note the Veteran was "also depressed and anxious about his age, his failing health, and his cancer of the colon," and therefore, the Veteran was "concerned about [these things] to the extent that it interacts in a negative way with his PTSD memories." The VA examiner opined that the Veteran's "PTSD seems somewhat more intense that it had been in the past as a result of other issues in his life."

Following a review of the evidence of record, the Board finds that a rating in excess of 30 percent for the Veteran's service-connected PTSD during the period on appeal is not warranted. Neither the VA examinations nor the lay descriptions of the Veteran's symptoms demonstrate a severity of occupational and social impairment that more nearly approximates the requirements for a greater than 30 percent rating. The Veteran has not demonstrated occupational and social impairment to a degree that would result in reduced reliability and productivity. Indeed, he has not exhibited symptoms typified in the 50 percent or higher rating criteria such as flattened affect, speech problems, and panic attacks more than once a week. Although the Veteran's former spouse stated in March 2011 that the Veteran once asked to be taken to the hospital because he wanted to jump out a window, he had denied ever having suicidal ideation at both of his VA examinations. Moreover, the Veteran was reportedly divorced in 1982, suggesting the event described by his ex-wife did not occur during the period of the claim. Additionally, the Veteran's GAF scores during the appeals period were always in the 65-70 range, indicating mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well.

Ultimately, the Veteran's disability picture more closely approximates the criteria for a 30 percent rating. While he does exhibit some deficiencies in occupational and social functioning, the symptomatology is not of sufficient severity, frequency, and duration to result in a higher rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013) (holding that a veteran "may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration"). Accordingly a rating in excess of 30 percent is not warranted

The Board has considered whether the Veteran's hand disabilities presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2015); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor is whether the disability picture presented in the record is adequately contemplated by the rating schedule. Thun v. Peake, 22 Vet. App. 111, 118 (2008). 

Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for a higher rating for additional or more severe symptomatology than is shown by the evidence. In deciding this claim, the Board has considered all of the Veteran's psychiatric symptomatology in evaluating his PTSD. As his disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and referral for extraschedular consideration is not warranted. Id. at 115.


As a final matter, the Board acknowledges that in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating based on individual unemployability (TDIU) is part of an increased rating claim when such claim is raised by the record. However, the Veteran does not contend and the evidence does not show that he is unemployable due to his PTSD. On the 2013 VA examination, the Veteran indicated that he retired from his job with Pepsi after 35 years and presently works part time with his brother delivering pizzas to supermarket chains. Accordingly, a claim for a total rating based on unemployability due to PTSD has not been raised and no action pursuant to Rice v. Shinseki is necessary. 22 Vet. App. 447 (2009).

In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against a higher rating, to that extent the doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2011); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to an evaluation in excess of 30 percent for PTSD is denied. 



____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs